CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 09, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JERMAINE ANTOINE ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00401 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DAVID COX, *et al.*, | ) | By:　Hon. Thomas T. Cullen |
| | ) | 　　　United States District Judge |
| Defendants. | ) | |

Plaintiff Jermaine Antoine English, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants David Cox, Dr. Bruce St. Amour, NP Kimla McDanial-Nagari,[1] and Sheriff Antonio D. Hash (collectively, "Defendants"). (*See* Am. Compl. [ECF No. 14].) He alleges that Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at the Roanoke Adult Detention Center ("RADC"). (*See id.* at 3–4.) This matter is before the court on motions to dismiss filed by Defendants Bruce St. Amour and NP Kimla McDanial-Nagari (collectively, the "Medical Defendants") (ECF No. 32) and Defendants David Cox and Antonio D. Hash (collectively, the "Jail Defendants") (ECF No. 34). Plaintiff did not respond to either motion and the time for doing so has elapsed. For the following reasons, the court will grant the Jail Defendants' motion to dismiss (ECF No. 34) and deny the Medical Defendants' motion to dismiss (ECF No. 32) as moot.

---

[1] Though Plaintiff's amended complaint identifies this Defendant as NP Kimla McDanial, Defendants' filings indicate that her correct name is Kimla McDanial-Nagari. (*See, e.g.*, ECF No. 32, at 1.)

## I.

In his amended complaint, Plaintiff alleges that Defendants caused him to miss a surgical procedure scheduled for July 25, 2023, at Carilion Orthopedics in Roanoke, Virginia. (Am. Compl. 4.) He claims that Hash—who, as Sheriff, oversaw RADC—violated his Eighth and Fourteenth Amendment rights by allowing Plaintiff to be transferred, despite knowing that he had an upcoming surgical appointment, due to "an incident" that occurred while Plaintiff was incarcerated at the RADC. (*Id.* at 5.)

He further claims Defendant Cox, Superintendent of the Western Virginia Regional Jail ("WVRJ"), and Defendants Dr. St. Amour and NP McDanial-Nagari, both medical providers working at WVRJ, failed to properly review the medical records sent from the RADC to WVRJ upon his transfer and ignored Plaintiff's medical needs despite reminders that Plaintiff had an upcoming surgical appointment for surgery on his right arm. (*Id.*) Plaintiff alleges that Cox, Dr. St. Amour, and NP McDanial-Nagari failed to get Plaintiff to his surgical appointment, causing him to miss his surgery and inflicting lasting harm to his right arm. (*Id.*) He claims that Defendants' actions violated his Eighth and Fourteenth Amendment rights. (*Id.*)

Plaintiff also alleges that Dr. St. Amour and NP McDanial-Nagari failed to properly assess and treat his medical needs concerning his right arm, and that they delayed setting an appointment with Carilion Orthopedics without any medical justification. (*Id.* at 6.) Specifically, Plaintiff alleges that they waited until three to four months after his scheduled surgery to send Plaintiff to an appointment at Carilion Orthopedics, causing permanent harm to Plaintiff's arm. (*Id.*)

Defendants have moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (*See* Medical Defs.' Mot. to Dismiss [ECF No. 32]; Jail Defs.' Mot. to Dismiss [ECF No. 34].) Plaintiff was issued a *Roseboro* notice and was given 28 days to respond to Defendants' motions, but he did not respond or seek an extension of time to do so.

One week after Defendants filed their motions to dismiss, Defendants Dr. St. Amour and NP McDanial-Nagari filed a notice of discharge and injunction indicating that the United State Bankruptcy Court for the Southern District of Texas entered an order directing that all claims and causes of action against Wellpath Holdings, Inc.—the entity which employed Dr. St. Amour and NP McDanial-Nagari to perform their duties in WVRJ—be discharged and permanently enjoining the holders of such claims from continuing any proceeding in connection with their claims. (Notice of Discharge & Inj. [ECF No. 37].) Plaintiff has not responded to contest that the discharge and injunction applies to his claims in this case.

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

- 3 -

U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up).

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Despite his assertion that Defendants violated both the Eighth and Fourteenth Amendments, Plaintiff's claims that Defendants were deliberately indifferent to his medical needs arise under *either* the Eighth *or* Fourteenth Amendment, depending on his status at the time of the events underlying his claims.

If Plaintiff was a pretrial detainee at the time of the alleged deliberate indifference, his claims arise under the Fourteenth Amendment, which protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that [are] excessive in relation to that purpose." *Jenkins v. Woodard*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (quoting *Short v. Hartman*, 87 F.4th 593, 599 (4th Cir. 2023)); *see Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim.") (citations and internal quotation marks omitted). But if Plaintiff was a convicted prisoner at the time of the alleged indifference, his claims arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because 'adequate . . . medical care' is a basic condition of humane confinement, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Plaintiff does not clearly allege whether he was a pretrial detainee or a convicted prisoner at the time of the events described in the amended complaint. Nevertheless, Plaintiff's claims fail under either standard.

**A. Plaintiff's Claims Against the Jail Defendants**

    i.    <u>Eighth Amendment Deliberate-Indifference Claim</u>

To the extent Plaintiff was a convicted prisoner at the time his claims arose, those claims are governed by the Eighth Amendment. *See Pfaller*, 55 F.4th at 445. To establish a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a prisoner must allege facts sufficient to show that (1) the deprivation was sufficiently serious and (2) the defendant acted with a sufficiently culpable state of mind toward the prisoner's medical needs. *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the second prong, the plaintiff must allege that the defendant (a) had "actual knowledge of the risk of harm to the inmate" and (b) "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (citations omitted). Put simply, a defendant "acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (citing *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)) And although the defendant need not act with "actual purposive intent," "mere negligence" is not enough. *Pfaller*, 55 F.4th at 445 (citation omitted).

Though he does not provide detailed factual allegations concerning the condition of his arm, the court can infer that Plaintiff had a serious medical need because it had been determined by Carilion Orthopedics that Plaintiff required surgery. *See Iko*, 535 F.3d at 241 ("[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity for a doctor's attention.") (citations and internal quotation marks omitted). But Plaintiff's

allegations, taken as true, do not show that either of the Jail Defendants acted with a sufficiently culpable state of mind concerning Plaintiff's medical needs.

While it is true that, in some circumstances, delay in receiving medical treatment can support an Eighth Amendment deliberate-indifference claim, *see Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022); *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018), Plaintiff has failed to allege facts showing that either Cox or Hash recognized that their actions were insufficient to mitigate a risk of harm to Plaintiff arising from his medical needs, *see Pfaller*, 55 F.4th at 445. Plaintiff's claim against Hash derives from his allegation that Hash knew Plaintiff had an upcoming appointment but allowed him to be transferred from RADC to WVRJ. (Am. Compl. 5.) But Plaintiff does not allege when the transfer took place nor how or why the transfer would have prevented him from attending his scheduled appointment. In fact, Plaintiff's subsequent allegations against the other Defendants suggest that, if those Defendants had reviewed the medical records and noted his appointment, Plaintiff would have been able to attend the surgery as scheduled. (*See id.* at 5–6.) Indeed, Plaintiff alleges that, months after his missed appointment, he was able to be transported from WVRJ to Carilion Orthopedics for an appointment. (*Id.* at 6.) Because Plaintiff's allegations do not show that Hash's actions were insufficient to mitigate any risk of harm to Plaintiff, he has not stated an Eighth Amendment claim against Defendant Hash.

Plaintiff's claim against Defendant Cox stems from an allegation that Superintendent Cox, Dr. St. Amour, and NP McDanial-Nagari did not properly review his medical records and "ignored" his "serious medical needs after being informed on multiple occasions that [he]

already had a scheduled appointment with Carilion Orthopedic to surgically repair his right arm" after Plaintiff was transferred to WVRJ. (Am. Compl. 5.)

Though Plaintiff broadly asserts that Cox knew of and ignored his medical needs, Plaintiff's complaint does not contain sufficient detail about Cox's actions personally to subject him to Eighth Amendment liability. It is well-settled that general allegations that a jail or prison official was aware that a plaintiff faced a medical issue are not enough to confer Eighth Amendment liability. *See Pearce v. Smith*, No. 1:20CV413 (AJT/TCB), 2022 WL 4126450, at *3 (E.D. Va. Sept. 9, 2022) (allegation that plaintiff's family complained to superintendent about his medication delivery was not enough to demonstrate that superintendent played any role in the provision of medical care at plaintiff's facility); *Green v. Newton*, No. I:14CVL257 AJT/IDD, 2015 WL 6672580, at *2, 5 (E.D. Va. Oct. 30, 2015) (superintendent's general awareness that there was an inmate with a heart pump did not render him liable for deliberate indifference where plaintiff did not show the superintendent had personal knowledge of any unreasonable risk to plaintiff's health or personally committed any actions that violated plaintiff's rights). Moreover, as a non-medical official, Cox was entitled to rely on the expertise of the medical staff at WVRJ and cannot be held liable for the delay or denial of medical treatment unless Plaintiff shows he was "personally involved with a denial of treatment, deliberately interfered with prison doctor's treatment, or tacitly authorized or was indifferent to the prison doctor's misconduct." *Edwards v. Trent*, No. 7:19CV00713, 2020 WL 4451061, at *3 (W.D. Va. Aug. 3, 2020).

Here, Plaintiff has not sufficiently alleged that Cox was personally involved in the denial of his medical treatment or deliberately interfered with Plaintiff's ability to seek treatment, and

courts in this circuit have dismissed similar claims against jail superintendents where the facts did not specifically show the superintendent's personal involvement in decisions about the plaintiff's medical condition. *See, e.g.*, *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 581 (E.D. Va. 2011), *vacated in part on other grounds*, No. 3:10CV867-HEH, 2012 WL 12931710 (E.D. Va. Jan. 12, 2012) (finding plaintiff had not sufficiently alleged denial-of-medical-care claim against superintendent in his individual capacity where the amended complaint did not allow the court to infer that the superintendent was subjectively aware of the plaintiff's medical needs or of any substantial risk to plaintiff's health and allegations suggested that the superintendent delegated medical care issues to the medical defendants); *Coppage v. Mann*, 906 F. Supp. 1025, 1043 (E.D. Va. 1995) (awarding summary judgment on Eighth Amendment deliberate-indifference claim in superintendent's favor where it was not shown that the superintendent held any exceptional authority to have a prisoner admitted to hospital for outside care, noting superintendent could not "be held liable for the medical decisions made by his staff unless he independently demonstrated deliberate indifference"); *McClary v. Hopkins*, No. 3:16-CV-88-FDW, 2019 WL 1980707, at *15 (W.D.N.C. May 3, 2019) (awarding summary judgment in superintendent's favor where superintendent was not personally involved in the plaintiff's medical care and plaintiff presented no evidence that the superintendent was aware of any deliberate indifference by the medical staff), *aff'd*, 778 F. App'x 264 (4th Cir. 2019); *Wood v. Clear*, No. 7:20-CV-00719, 2021 WL 4443078, at *4 (W.D. Va. Sept. 28, 2021) (awarding summary judgment for superintendent where there was no evidence that he was responsible for reviewing, revising, or enforcing the guidelines used by the medical staff to make treatment determinations, that he had any input as to whether an inmate receive

particular medical treatment, or that he otherwise interfered with or limited the plaintiff's ability to receive medical attention).

An Eighth Amendment deliberate-indifference claim "must satisfy a high bar, and that bar is not met by showing that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Formica*, 739 F. App'x at 755 (citations and internal quotation marks omitted). "At bottom, for liability to be imposed under § 1983, each defendant must have had personal knowledge of, *and involvement in*, the alleged violations of the plaintiff's constitutional rights for the action to proceed." *Pearce*, 2022 WL 4126450, at *3 (citing *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690–91 (E.D. Va. 2010)).

Because Plaintiff's amended complaint does not clearly allege Cox had any personal knowledge of the risk of harm to Plaintiff or that he recognized that his actions were insufficient to mitigate any such risk, the court will dismiss Plaintiff's Eighth Amendment deliberate-indifference claim against Defendant Cox as well. *See Pfaller*, 55 F.4th at 445.

ii. <u>Fourteenth Amendment Deliberate-Indifference Claim</u>

To state a claim for deliberate indifference to medical needs under the Fourteenth Amendment, the plaintiff must allege:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). Even under the more lenient Fourteenth Amendment standard, Plaintiff has not stated a deliberate indifference claim against either Hash or Cox.

Plaintiff's Fourteenth Amendment claim against Hash fails because his amended complaint does not demonstrate that Hash intentionally, knowingly, or recklessly acted in a manner insufficient to address any risk to Plaintiff or that Hash should have known that Plaintiff's transfer posed an unjustifiably high risk of harm to Plaintiff. Nothing in Plaintiff's allegations suggests that Hash knew or should have known that being transferred to WVRJ would cause Plaintiff to miss his surgical appointment. Plaintiff does not allege that the transfer took place on a date that would prevent him from attending the July 25, 2023 appointment, any physical distance between WVRJ and Carilion Orthopedics that would have made it impractical to maintain his appointment, or any other fact that was known or should have been known by Hash to render Plaintiff's transfer unreasonable in light of his medical condition. Consequently, Plaintiff has not stated a claim against Hash for violation of the Fourteenth Amendment.

Plaintiff's allegations are also insufficient to show that Defendant Cox was deliberately indifferent to Plaintiff's medical needs in violation of the Fourteenth Amendment. Cox's position as superintendent does not, without more, render him liable for all goings-on in the jail. *See Doss on behalf of Est. of Herbert Wayne Doss v. Marshall*, No. 5:25-CV-00135, 2026 WL 116291, at *12 (S.D.W. Va. Jan. 15, 2026) (dismissing Fourteenth Amendment deliberate-indifference claim against former superintendent where there were no allegations showing he "intentionally, knowingly, *or even recklessly* failed to act to appropriately address the risk that the

alleged condition posed"). Nothing in the amended complaint, taken as true, would show that Cox's personal action or inaction posed an unjustifiably high risk of harm to Plaintiff or that Cox intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk of harm to Plaintiff. He has not shown that Cox should have reviewed his medical records or that any action of Cox's caused him to miss his July 25, 2023 appointment. Plaintiff makes conclusory allegations that Cox was deliberately indifferent to his serious medical needs, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Accordingly, Plaintiff has failed to state a plausible Fourteenth Amendment claim against Cox.

### B. Plaintiff's Claims Against the Medical Defendants

Plaintiff's remaining deliberate-indifference claims against Dr. St. Amour and NP McDanial-Nagari are subject to dismissal based on the discharge of the bankruptcy court.

On November 11, 2024, Wellpath Holdings, Inc., who employed Dr. St. Amour and NP McDanial-Nagari and contracted with WVRJ for the provision of medical care to inmates, filed a petition of bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. (Notice of Discharge & Inj. ¶ 1 [ECF No. 37].) On May 1, 2025, the bankruptcy court entered findings of fact, conclusions of law, and an order confirming a Chapter 11 plan of reorganization for Wellpath and its affiliates. (Ex. A, Notice of Discharge & Inj. ("Confirmation Order") [ECF No. 37-1].) On June 4, 2025, the bankruptcy court entered a "General Form of Order Regarding Lift Stay Motions." (Ex. B, Notice of Discharge & Inj. ("Stay Order") [ECF No. 37-2].) Both the Plan and the Stay Order provide for the release and

discharge of claims, interests, and causes of action against Wellpath and its affiliates. (*See* Confirmation Order, Art. IX.A; Stay Order ¶ 3.) The Confirmation Order also permanently enjoins the holders of discharged claims from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests." (Confirmation Order, Art. IX.F); *see also* 11 U.S.C. § 524(a)(2) (explaining that a discharge by a bankruptcy court "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as personal liability of the debtor, whether or not discharge of such debt is waived.").

Although Dr. St. Amour and NP McDanial-Nagari are not themselves parties to the bankruptcy proceeding, both the Confirmation Order and the Stay Order provide for the release of claims against "related parties," which are defined to include the employees and agents of Wellpath and its affiliates, unless the claim holder affirmatively opts out of the Third-Party Release provided for in the bankruptcy plan. (*See* Confirmation Order Art. I.A.175 (defining related parties); *id.* at Art. I.A.177 (defining released parties).) The Medical Defendants have declared, and Plaintiff has not contested, that Plaintiff did not affirmatively opt out of the Third-Party Release. Accordingly, Plaintiff is enjoined from pursuing his claims against Dr. St. Amour and NP McDanial-Nagari, and his claims against both Medical Defendants are subject to dismissal based on the bankruptcy court orders.

## IV.

For the reasons set forth above, the court will grant the Jail Defendants' motion to dismiss and dismiss Plaintiff's claims against those Defendants in their entirety. The court will

also dismiss Plaintiff's claims against the Medical Defendants pursuant to the Bankruptcy Court's May 1, 2025 and June 4, 2025 orders and will therefore deny the Medical Defendants' motion to dismiss as moot.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying order to Plaintiff.

**ENTERED** this 9th day of March, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE